## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD SCHNACKE, | Case No.: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SEACHANGE INTERNATIONAL, INC., ROBERT PONS, PETER AQUINO, DAVID J. NICOL, JULIAN D. SINGER, STEVEN G. SINGER, and MATTHEW STECKER, | **COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| Defendants. | |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### BACKGROUND

1.     This action concerns a proposed transaction ("Proposed Transaction") announced on December 22, 2021 pursuant to which SeaChange International, Inc. ("SeaChange" or the "Company") will merge with Triller Hold Co. LLC ("Triller").

2.     On December 22, 2021, SeaChange's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Under the Merger Agreement, SeaChange will combine with Triller, which will be publicly traded on NASDAQ under the symbol "ILLR" (the "Proposed Transaction"). Pursuant to the terms of the Merger Agreement, SeaChange shareholders will own approximately 2.3% of the combined company (the "Merger Consideration").

3.     On February 22, 2022, in order to convince SeaChange's shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading S-4

Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.     In addition, a special meeting of SeaChange's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so SeaChange's stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.     This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received

2

substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's shares trade on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, a SeaChange shareholder.

10.     Defendant SeaChange is a Delaware corporation and a party to the Merger Agreement. SeaChange shares are traded on the NASDAQ under the ticker symbol "SEAC."

11.     Defendant Robert Pons is Chairman of the Board.

12.     Defendant Peter D. Aquino the Company's Chief Executive Officer and a director of the Company.

13.     Defendant David J. Nicol is a director of the Company.

14.     Defendant Julian D. Singer is a director of the Company.

15.     Defendant Steven G. Singer is a director of the Company.

16.     Defendant Matthew Stecker is a director of the Company.

## FACTS

17.     SeaChange provides video streaming, linear TV, and video advertising technology for operators, content owners, and broadcasters globally. SeaChange's technology enables operators, broadcasters, and content owners to cost-effectively launch and grow premium linear TV and direct-to-consumer streaming services to manage, curate, and monetize their content. SeaChange helps protect existing and develop new and incremental advertising revenues for traditional linear TV and streaming services with its unique advertising technology.

18.     Triller is an integrated digital technology, media and entertainment company

3

broadly engaged in the development, production, promotion, marketing and monetization of content through its mobile app, streaming platform, and virtual and live events. Triller also produces music, sports, lifestyle, fashion and entertainment content, and live events that elevate culture and provide a turnkey platform for partners and customers to do the same.

19.     On December 22, 2021, SeaChange's Board caused the Company to enter into the Merger Agreement.

20.     According to the press release announcing the Proposed Transaction:

LOS ANGELES and BOSTON, December 22, 2021/PRNewswire/ —SeaChange International, Inc. ("SeaChange") (NASD:SEAC) together with Triller Hold Co LLC ("TrillerVerz" or the "Company") today announced that they have entered into a definitive agreement and plan of merger (the "Merger Agreement") to combine with SeaChange, a publicly-traded company focused on advanced digital advertising with TrillerVerz. The proposed business combination (the "Business Combination") is expected to ultimately result in a value of the combined company at approximately $5 billion.

TrillerVerz believes it is positioned to become a leading AI-powered social media platform for content, creators & commerce and is anticipated to be publicly traded on a U.S. national exchange through the proposed Business Combination.
After completing the proposed Business Combination, SeaChange will change its name to "TrillerVerz Corp." The ticker symbol is expected to change from "SEAC" currently listed on Nasdaq to the new ticker symbol "ILLR".

\*\*\*

**Transaction Overview**

Pursuant and subject to the terms and conditions of the Merger Agreement, in addition to other contemplated transactions, (i) the parties anticipate that TrillerVerz will conduct an offering of convertible notes prior to the closing in an amount in excess of $100 million (the "Company Convertible Notes"), and (ii) the charter of the surviving company will provide for two classes of common stock, consisting of Class A common stock ("Buyer Class A Common Stock") and Class B common stock (which Class B common stock is anticipated to provide for super-voting rights to provide its holders 76% or more of the total voting rights) ("Buyer Class B Common Stock"). The stockholders of SeaChange will have the right to elect to receive either (i) their pro rata portion of $25 million cash consideration along with their pro rata portion of an aggregate $75 million in principal of notes (the "Notes Consideration") to be issued by the surviving company to the holders of SeaChange common stock (such cash and notes consideration, the "Cash/Notes

Consideration") or (ii) a number of shares of Buyer Class A Common Stock (the "Stock Consideration"), in an amount equal to that which such holder would have received if such holder had purchased Company Convertible Notes in an aggregate amount equal to its pro rata portion of the Cash/Notes Consideration and then converted such Company Convertible Notes at the conversion price at which such Company Convertible Notes were issued and then participated pro-rata along with the TrillerVerz holders in the proposed Business Combination. Assuming that (i) all holders of SeaChange common stock elect the Stock Consideration and (ii) that TrillerVerz issues $250 million of Company Convertible Notes which convert in connection with the proposed Business Combination at an agreed discount of 20% to an assumed $5 billion TrillerVerz valuation, the stockholders of SeaChange would own approximately 2.3% of the surviving company and the holders of TrillerVerz would hold approximately 97.7% of the surviving company. If all stockholders of SeaChange elected to receive the Cash/Notes Consideration, such stockholders would have no equity interest in the surviving company, and the Triller holders would collectively own 100% of the surviving company. For SeaChange stockholders that elect the Cash/Notes Consideration, each would receive their pro rata portion of such Cash/Notes Consideration which would then also reduce the resulting SeaChange stockholders' ownership percentages by taking into account the payment of the Cash/Notes Consideration and related reduction in the Stock Consideration. The notes (the "Merger Consideration Notes") to be issued to SeaChange stockholders who elect the Cash/Notes Consideration are payable on the one-year anniversary of issuance, bear interest at a rate of 5% per annum and, in the event an agreed fairness opinion is obtained by SeaChange in accordance with the provisions of the Merger Agreement, will be automatically converted by the surviving company into Buyer Class A Common Stock at such time as the market capitalization of the surviving company equals or exceeds $6 billion for ten consecutive trading days into 80% of the same number of shares of Buyer Class A Common Stock which the SeaChange stockholder would have received if instead of electing the Cash/Notes Consideration such SeaChange stockholder had elected the Stock Consideration for the portion of the Cash/Notes Consideration attributable to the principal amount of the Notes Consideration. If the fairness opinion is not obtained, the Merger Consideration Notes will not be automatically convertible, but in any case, the holders of the Merger Consideration Notes will have the option to convert into Buyer Class A Common Stock if the surviving company exercises its optional redemption right, which it may do at any time, in whole or in part, on the same terms set forth above. The holders of the Merger Consideration Notes will have recourse against the surviving company and its assets only to the extent of the surviving company's interest in certain of its subsidiaries (who will also provide guarantees of the Merger Consideration Notes). The existing subsidiaries of SeaChange prior to the proposed Merger are also anticipated to provide a first lien security interest on their assets securing the Merger Consideration Notes. The Merger Consideration Notes will have limited covenants.

***

**Advisors**

Akin Gump Strauss Hauer & Feld LLP has advised TrillerVerz with certain legal matters related to the proposed Business Combination and K&L Gates LLP has advised SeaChange with respect to certain legal matters relating to the proposed Business Combination.

21.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

22.     It is therefore imperative that the Company's shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

23.     Section 4.4 of the Merger Agreement has a "no solicitation" clause that prevents SeaChange from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

**Buyer Non-Solicitation.**

(a) Buyer agrees that, during the Pre-Closing Period, neither it nor any of its Subsidiaries shall, nor shall it or any of its Subsidiaries authorize any of its Representatives to, directly or indirectly: (i) solicit, initiate or knowingly encourage, induce or knowingly facilitate the communication, making, submission or announcement of any Acquisition Proposal or Acquisition Inquiry; (ii) furnish any nonpublic information regarding Buyer or any of its Subsidiaries to any Person in connection with or in response to an Acquisition Proposal or Acquisition Inquiry; (iii) engage in discussions or negotiations with any Person with respect to any Acquisition Proposal or Acquisition Inquiry; (iv) approve, endorse or recommend any Acquisition Proposal (subject to Section 5.4); (v) execute or enter into any letter of intent or any Contract contemplating or otherwise relating to any Acquisition Transaction (other than a confidentiality agreement permitted under this Section 4.4(a)); or (vi) publicly propose to do any of the foregoing; provided, however, that, notwithstanding anything contained in this Section 4.4 and subject to compliance with this Section 4.4, prior to obtaining the Required Buyer Stockholder Vote, Buyer may, directly or indirectly through any of its Representatives, (x) furnish access and nonpublic information regarding Buyer to, (y) enter into or participate in discussions or negotiations with or (z) contact, in order to clarify the terms and conditions of any Acquisition Proposal so as to determine if such Acquisition Proposal constitutes, or would reasonably be

expected to result in, a Superior Offer, any Person in response to a bona fide Acquisition Proposal by such Person if: (A) neither Buyer nor any of its Representatives shall have breached this Section 4.4 in any material respect in connection with the making of such Acquisition Proposal; (B) the Buyer Board concludes in good faith after consultation with outside financial advisors and outside legal counsel that such Acquisition Proposal constitutes, or is reasonably likely to result in, a Superior Offer and that the failure to take such action contemplated in clauses (x), (y) or (z) above is reasonably likely to be inconsistent with the fiduciary duties of the Buyer Board under applicable Law; (C) at least 24 hours prior to furnishing such nonpublic confidential information to, or entering into discussions with, such Person, Buyer gives the Company written notice of the identity of such Person and of Buyer's intention to furnish nonpublic information to, or enter into discussions with, such Person; (D) prior to furnishing any nonpublic information, Buyer receives from such Person an executed confidentiality agreement containing provisions, in the aggregate, at least as favorable to Buyer as those contained in the Confidentiality Agreement; and (E) within 24 hours after furnishing any such nonpublic information to such Person, Buyer furnishes or makes available such nonpublic information to the Company (to the extent such information has not been previously furnished or made available by Buyer to the Company). Without limiting the generality of the foregoing, Buyer acknowledges and agrees that, in the event any Representative of Buyer (whether or not such Representative is purporting to act on behalf of Buyer) takes any action that, if taken by Buyer, would constitute a breach of this Section 4.4, the taking of such action by such Representative shall be deemed to constitute a breach of this Section 4.4 by Buyer for purposes of this Agreement.

24.    In addition, Section 9.3 of the Merger Agreement requires SeaChange to pay up to a $4,000,000 "termination fee" in the event this agreement is terminated by SeaChange and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to SeaChange's ability to consider other offers.

25.    Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

26.    First, the Registration Statement entirely omits SeaChange's and Triller's financial projections.

27.    The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

28.     Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor, Scura Partners LLC ("Scura Partners") connection with the Proposed Transaction.

29.     With respect to Scura Partner's *SeaChange Discounted Cash Flow Analysis*, the Registration Statement fails to disclose (i) the financial forecast and other information and data provided by SeaChange's management; (ii) the after-tax unlevered free cash flows for SeaChange; (iii) the terminal/continuing value of SeaChange; (iii) the individual inputs and assumptions underlying a terminal value multiple range of 10.0x and 14.0x to EBITDA;  (iv) weight average cost of capital; and (v) net operating losses.

30.     With respect to Scura Partner's *Triller Discounted Cash Flow Analysis*, the Registration Statement fails to disclose (i) the financial forecast and other information and data provided by SeaChange's management; (ii) the after-tax unlevered free cash flows for Triller; (iii) the terminal/continuing value of Triller; (iii) the individual inputs and assumptions underlying a terminal value multiple range of 23.0x and 28.0x to EBITDA;  and (iv) weight average cost of capital.

31.     Third, the Registration Statement fails to disclose sufficient information regarding the existence of and/or number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any,  under which such provisions would fall away or prevent parties from submitting a bid.

32.     Fourth, the Registration Statement fails to disclose the terms and values of the proposals, indications of interest, and letters of intent submitted during the process leading up to the execution of the Merger Agreement.

33.     Fifth, the Registration  Statement fails to disclose sufficient information regarding communications about post-transaction employment and directorship during the negotiation of the Proposed Transaction.

34.     The omission of the above-referenced material information renders the Registration Statement false and misleading.

35.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Registration Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants was aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

40.     The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement. Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

41.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

## (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the

Registration Statement.

46.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 13, 2022

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com
*Attorneys for Plaintiff*